### PATRICK KENNY and MARY A., his wife,

#### v.

### HENRY LEMBECK et al.

1. Where a person who desires to buy land at a judicial sale secretly enters into a fraudulent arrangement with a part of the persons interested in the land, by which he agrees, if such persons will assist him in acquiring the land, he will pay them a sum of money in addition to his bid, so that they shall receive more than the others, and his object in making the arrangement is to defraud all the persons interested in the land, both those with whom the arrangement is made as well as those with whom it is not made, his fraud is so iniquitous in its character that the court, in undoing his wrong, must administer justice regardless of the consequences to him.

2. When a witness confesses that he was a willing participant in the fraud in respect to which redress is sought, the safe administration of justice requires that his evidence shall not be credited unless it is corroborated in one or more essential points.

On final hearing on bill and answers and proofs taken orally.

*Mr. Samuel D. Haines* and *Mr. Charles H. Voorhis,* for the complainants.

*Mr. Charles L. Corbin,* for the defendant Lembeck.

*Mr. William S. Stuhr,* for the defendants Margaret Burke and Ellen Kenny.

VAN FLEET, V. C.

The complainants seek by this suit to have a sale of land made by a master of this court, and the deed made in execution of such

:sale, set aside and declared to be nullities, or that the defendant Lembeck be required to pay, in addition to the price for which the land was sold to him at public sale, the sum of $1,900. The complainants rest their right to relief on the ground of fraud.

The following are the material averments of their bill: In June, 1892, Margaret Burke and James T., her husband, and Ellen Kenny filed their petition in this court, asking that certain land, devised by the will of John Kenny, deceased, be sold under the statute authorizing the sale of land limited over to infants or in contingency. Margaret Burke was a daughter of John Kenny, deceased, and took under his will an undivided moiety of the land sought to be sold, in case she and her brother, Patrick Kenny, one of the complainants, were both living when Ellen Kenny, the widow of John, died or remarried. The other petitioner, Ellen Kenny, was the widow of John, and by his will was entitled to a life estate in the land provided she did not remarry. James T. Burke joined in the petition as the husband of Margaret. Patrick Kenny, one of the complainants, was made a party to the proceeding because, under the will of his father, he took a contingent estate in the land precisely like that of his sister, Margaret Burke. The court, on the 3d day of October, 1892, and after the questions raised by the petition above mentioned had been referred to a master and he had reported thereon, ordered the land to be sold, and it was sold at public auction on the 10th day of May, 1893, to the defendant Lembeck for $8,100. This sum was $100 in excess of the value of the land as ascertained by the master. The sale was confirmed May 31st, 1893, and a deed made in execution of it on the 13th day of June following. On obtaining his deed, Mr. Lembeck commenced tearing down the building on the land and erecting new structures.

The preceding averments are not controverted, but the dispute commences at this point and grows out of an averment charging that Mr. Lembeck, shortly before the petition was filed, secretly entered into a fraudulent agreement, by which he promised that if the petitioners would institute proceedings and cause the land

to be sold, he would pay the costs and expenses of the proceedings, and at the sale buy the land at a price as much below $10,000 as he could, and that if he succeeded in acquiring the land for less than $10,000 he would pay the petitioners the difference between the price he paid and $10,000. The complainants allege that, by means of this secret arrangement, Mr. Lembeck was enabled to acquire the land for $1,900 less than he would otherwise have been compelled to pay for it.

There can be no doubt, if the arrangement alleged existed when the land was sold, that the effect of it was to change the position of the petitioners towards Mr. Lembeck from one of conflicting interests to one of identity of interests. In the absence of such an arrangement, it is manifest the petitioners would, to promote their interests and benefit themselves, have done everything in their power to cause the land to be sold for the highest price possible; and it is equally clear, if such an arrangement existed, that it necessarily operated as a powerful bribe to induce the petitioners to assist Mr. Lembeck in acquiring the land for the lowest price possible. The less money he paid the more they would be entitled to receive in ready cash, and just to the extent that they were benefited, in the execution of such a scheme, would the persons in whom the money should ultimately vest be defrauded. The complainants had an indisputable right to have the land sold free from any collusive arrangement by which its price might be depressed, and also to have every dollar which should be paid for it, either openly or secretly, invested and held until future events should decide what persons would, if the land had not been sold, have been entitled to it in fee simple absolute. If it has been satisfactorily proved that Mr. Lembeck acquired the land, by means of the fraudulent contrivance alleged, no doubt, I think, can be entertained that a wrong has been committed against the complainants which it is the duty of this court to redress. If the fact is that Mr. Lembeck acquired the land by means of the fraud alleged, then it is undeniable that he, with the assistance of the petitioners, has used the machinery of this court to defraud the complainants. Instead of being used, as it was intended to be,

Kenny v. Lembeck.

for the protection of the complainants, the process of this court has been prostituted and made the instrument by which they have been deprived of their rights.  Against a wrong committed by such means this court must, not only that wrong may be undone and the right vindicated, but also to preserve its own honor and dignity, give the most complete redress within its power. If Mr. Lembeck either concocted or adopted this scheme for the purpose of obtaining the land for a less price than he would otherwise have been compelled to pay for it, secretly intending to use it as a means not only of defrauding the complainants, but also to cheat the petitioners, by making promises to them which he did not mean to perform, then it is obvious that his fraud is so outrageous and iniquitous in its character as to place him in a position where a fearless and effectual administration of justice requires that the court shall, in undoing his wrong, give redress without regard to the consequences to him.  In such a case, nothing short of a thorough undoing of the wrong, regardless of the consequences to the wrongdoer, would adequately redress the injured person and at the same time vindicate the majesty of the law.

It is thus made plain that the question on which the complainants' right to relief depends is, Has the fraudulent agreement alleged been satisfactorily proved?  Or, stated in another form, Has that agreement been so clearly established by proof that it may safely be made the basis of judicial redress?  The bill alleges, it will be remembered, that this agreement was made a short time before the petition, asking that the land be sold, was filed, and that the parties to it were Mr. Lembeck on the one side and Margaret Burke and James T., her husband, and Ellen Kenny on the other, and that its principal provisions were that Lembeck should pay the costs of the proceeding, buy the land at the sale as low as he could, and if he succeeded in buying it for less than $10,000 pay the difference between his bid and $10,000 to all three of the petitioners.  No attempt has been made to prove that an agreement of the kind alleged was made with all three of the petitioners, nor with anybody at the time alleged.  If such an agreement was ever made, it was made with

James T. Burke alone, and without the knowledge of the other two petitioners; and if such an agreement was made with him, it was not made until long after the petition had been filed, nor until the questions raised by the petition were under investigation.

The only witness by whom the complainants attempted to prove the agreement was James T. Burke. He testified that, in August, 1892, while the master was taking testimony respecting the questions raised by the petition, he became dissatisfied because the hearings were adjourned from time to time to suit the convenience of counsel; he feared that the land would, in consequence of the dilatory course of the proceeding, be wholly consumed in the payment of costs, and, under the influence of this fear, he ordered his counsel to stop the proceeding and "take it out of court." A short time after he gave this order, he says he had an interview with Mr. Lembeck. In describing what was said in this interview, he testified as follows:

"Lembeck told me I was a fool to take it out of court; he says there aint a man in the country that will give $10,000 for that property only myself; Kenny [meaning Patrick Kenny, one of the complainants] will never give $10,000 for it, and if it is sold for anything less, I am to give you personally the balance; so I left it in court; I said, 'Let it go, I'll take the chances;' Lembeck then said, 'If Kenny bids $9,000, there will be $1,000 coming to you; if he bids $9,500, there will be $500 coming to you; if he bids $10,000, there is nothing;' I said, 'All right, let it go then.'"

Mr. Burke further testified that either on the day that Mr. Lembeck received his deed or the day after, he called on him at his office, and said to him, "Now, it is my time next—time to settle up with me now;" that Mr. Lembeck asked, "Settle up what?" and he answered, "Of the balance;" and that Mr. Lembeck then said, "Why, I don't owe you nothing; I used you for all you are worth, and I got out of you all I could; I have got my deeds in one pocket and my money in another, and you can go to h———." He further testified that he then said to Mr. Lembeck that if he did not settle with him he would have to deal with the chancellor of the State of New Jersey, and that thereupon he left Mr. Lembeck's office.

The evidence of this witness constitutes the sole foundation of

Kenny v. Lembeck.

the complainants' case. It has no other support. If his evidence is not true, the complainants have no right to relief. This witness, by his own confession, has cast distrust upon his whole evidence and made it difficult to believe anything he says. He admits that he entered into a scheme to defraud his wife, her brother and his mother-in-law. As described by himself, he appears to be thoroughly corrupt. The safe administration of justice requires that the evidence of such a witness should not be believed unless corroborated in one or more essential points. His evidence is wholly uncorroborated, except that there was a time when Mr. Lembeck was willing to pay $10,000 for the land. On the 20th day of January, 1892, more than sixteen months before the sale, Mr. Lembeck wrote a letter to the solicitor of Margaret Burke and Ellen Kenny, in which he stated that he had made an arrangement with Mr. Burke to purchase the land for $10,000, but added : " This offer is made for the purpose of having the property turned over to us this spring, and I should think you can get it through in a month." When this letter was written, Mr. Lembeck wanted the land to erect a building thereon, in order to avoid the necessity of making changes in a building on an adjacent lot, and it was then supposed that a title to the land might be speedily acquired by means of a suit in partition, and a bill for that purpose was subsequently filed, but it was afterwards dismissed, because, on examination, it was found that the state of the title was such that the land could not be partitioned, either actually or by means of a sale. The proceeding under which the land was sold was not commenced until June, 1892, and the order for sale was not made until October of the same year. In the meantime, Mr. Lembeck had, at a considerable outlay, altered the building on the adjacent lot, so that the considerations which made the land desirable to him in the spring of 1892 did not exist in August, 1892, when Burke says the fraudulent agreement was made. In view of these facts, it is quite obvious that the fact that Mr. Lembeck was willing to pay $10,000 for the land in the spring of 1892, when he specially needed it, does not serve to corroborate, in the slightest degree, the truth of Burke's

evidence. His evidence stands not only wholly unsupported, but contradicted by both Mr. Lembeck and himself. Lembeck swears that no such agreement or arrangement as that testified to by Burke was ever made. In an affidavit made on the 28th day of October, 1893, and annexed to the bill in this case, Burke, in stating the terms of the fraudulent bargain, swore that Mr. Lembeck said "Nobody but me will give $10,000 for that property; you let the case go on to sale, and all I can bid it in for below $10,000, I will pay you, your wife and your mother-in-law." And in giving the terms of the same bargain, as a witness on the final hearing, it will be remembered that he swore that Lembeck promised to pay him personally, and not to him, his wife and his mother-in-law, the difference between $10,000 and the amount of his bid. He then swore that Lembeck's promise was expressed in these words: "Kenny will never give $10,000 for the land, and if it is sold for anything less, I am to give you personally the balance." Not only because the evidence of this witness is wholly uncorroborated, and he stands self-contradicted, but because of the highly-improbable character of his story, I think his evidence must be treated as entirely unworthy of credit.

The complainants' bill must be dismissed, with costs.